# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: CHRISTOPHER JOHN RUDY,**
*Appellant*

---

2019-2301

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 07/425,360.

---

Decided: April 24, 2020

---

CHRISTOPHER JOHN RUDY, Port Huron, MI, pro se.

MAI-TRANG DUC DANG, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, DANIEL KAZHDAN.

---

Before PROST, *Chief Judge,* O'MALLEY and TARANTO, *Circuit Judges.*

PROST, *Chief Judge.*

Christopher Rudy appeals from a decision of the Patent Trial and Appeal Board ("Board") affirming the rejection of claims 34, 35, 37, 38, 40, and 45–49 of United States Patent Application No. 07/425,360 ("the '360 application") as ineligible for patenting under 35 U.S.C. § 101. We affirm.

## I

Mr. Rudy originally filed the '360 application on October 21, 1989. The application, entitled "Eyeless, Knotless, Colorable and/or Translucent/Transparent Fishing Hooks with Associatable Apparatus and Methods," has undergone a lengthy prosecution, including numerous amendments and petitions, four Board appeals, and a previous trip to this court in which we affirmed the obviousness of all claims then on appeal. *In re Rudy*, 558 F. App'x. 1011 (Fed. Cir. 2014).

Claims 34, 35, 37, 38, 40, and 45–49 of the '360 application were the subject of a March 2015 office action in which the Examiner rejected them as ineligible for patenting under 35 U.S.C. § 101. That rejection was made final in September 2015, and affirmed by the Board on October 2, 2019.[1] Claim 34, which the Board considered illustrative, recites the following:

34. A method for fishing comprising steps of

(1) observing clarity of water to be fished to determine whether the water is clear, stained, or muddy,

(2) measuring light transmittance at a depth in the water where a fishing hook is to be placed, and then

(3) selecting a colored or colorless quality of the fishing hook to be used by matching the observed water conditions ((1) and (2)) with a color or colorless quality which has been previously determined to be less attractive under said conditions than

---

[1]    Claims 26–33 and 54–60 stand allowed. All remaining claims of the '360 application have been cancelled by the applicant. J.A. 957–58.

those pointed out by the following correlation for fish-attractive non-fluorescent colors:

| Water Condition | % Light Transmittance, i.e., light intensity at fishing depth as a percentage of light intensity at surface on a clear noon summer day | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Clear | 0% | 10% | 20% | 30% | 40% | 50% | 60% | 70% | 80% | 90% | 100% |
| | Black | White | Yellow | Blue | Purple | Silver | Green | Gray | Gold | Red | Red |
| | | | | Blue | | | Green | | | | |
| Stained | 0% | 10% | 20% | 30% | 40% | 50% | 60% | 70% | 80% | 90% | 100% |
| | Black | White | Black | Gold | Orange | Red | Silver | Blue | Purple | Green | Gray |
| | | | Black | Yellow | | | | Green | | | |
| Muddy | 0% | 10% | 20% | 30% | 40% | 50% | 60% | 70% | 80% | 90% | 100% |
| | Black | Orange | Yellow | Yellow | Silver | Red | Red | Green | Gray | Purple | Black |
| | | Silver | White | White | Gold | | | | Blue | | |

J.A. 24, claim 34 (formatting adjusted).

The Board conducted its analysis under a dual framework for patent eligibility, purporting to apply both 1) "the two-step framework described in *Mayo* [*Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012)] and *Alice* [*Corp. v. CLS Bank International*, 573 U.S. 208 (2014)]," and 2) the Patent and Trademark Office's 2019 Revised Patent Subject Matter Eligibility Guidance, 84 Fed. Reg. 50 (Jan. 7, 2019) ("Office Guidance").[2]  J.A. 4–5.

---

[2]    Shortly after the Board issued its decision in this case, the Patent Office issued supplemental guidance. *See* October 2019 Patent Eligibility Guidance Update, 84 Fed. Reg. 55942 (Oct. 18, 2019).  Although the supplement's substantive eligibility analysis is not relevant to this appeal,

The Board concluded "[u]nder the first step of the *Mayo/Alice* framework and Step 2A, Prong 1, of [the] Office Guidelines" that claim 34 is directed to the abstract idea of "select[ing] a colored or colorless quality of a fishing hook based on observed and measured water conditions, which is a concept performed in the human mind." J.A. 9. The Board went on to conclude that "[u]nder the second step in the *Mayo/Alice* framework, and Step 2B of the 2019 Revised Guidance, we determine that the claim limitations, taken individually or as an ordered combination, do not amount to significantly more than" the abstract idea. J.A. 11.

Mr. Rudy timely appealed, challenging both the Board's reliance on the Office Guidance, and the Board's ultimate conclusion that the claims are not patent eligible. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

II

Mr. Rudy contends that the Board "misapplied or refused to apply . . . case law" in its subject matter eligibility analysis and committed legal error by instead applying the Office Guidance "as if it were prevailing law." Appellant's Br. 1. Mr. Rudy argues that the Office Guidance "simplistically represent[s] patent-eligible subject matter law," and is used by the Patent Office as a "shortcut to ease *Mayo/Alice* test application, with no force or effect of law." Appellant's Arg. 3[3]; Reply Br. 7–8. We agree with Mr. Rudy that the Office Guidance is not, itself, the law of patent eligibility, does not carry the force of law, and is not binding in our patent eligibility analysis.

---

our discussion of the role of the Office Guidance applies equally to the supplement.

[3]    Appellant's Arg. refers to the Attached Argument Sheet submitted as an attachment to Mr. Rudy's informal opening brief.

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  However, the Supreme Court "ha[s] long held that this provision contains an important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not patentable." *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 589 (2013) (quoting *Mayo*, 566 U.S. at 71).

In determining whether those judicial exceptions apply, we are bound to "follow the Supreme Court's two-step framework for patent eligibility under § 101." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362 (Fed. Cir. 2020) (citing *Alice*, 573 U.S. at 217); *see also Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994) ("[O]nce the [Supreme] Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law.")  We are similarly bound by our own fulsome precedent on the proper application of the Supreme Court's test.  *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This Court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *[e]n banc.*"); *see Customedia*, 951 F.3d at 1362–66 (collecting cases).

We are not, however, bound by the Office Guidance, which cannot modify or supplant the Supreme Court's law regarding patent eligibility, or our interpretation and application thereof.  As we have previously explained:

> While we greatly respect the PTO's expertise on all matters relating to patentability, including patent eligibility, we are not bound by its guidance. And, especially regarding the issue of patent eligibility and the efforts of the courts to determine the

> distinction between claims directed to [judicial exceptions] and those directed to patent-eligible applications of those [exceptions], we are mindful of the need for consistent application of our case law.

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x. 1013, 1020 (Fed. Cir. 2019) (non-precedential). Accordingly, we apply our law and the relevant Supreme Court precedent, not the Office Guidance, when analyzing subject matter eligibility. To the extent the Office Guidance contradicts or does not fully accord with our caselaw, it is our caselaw, and the Supreme Court precedent it is based upon, that must control. *See id.* at 1021 (holding claims ineligible, despite Office Guidance suggesting otherwise, where statements and examples in the Guidance were inconsistent with *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015)).

III

Turning to Mr. Rudy's case, we conclude that although a portion of the Board's analysis is framed as a recitation of the Office Guidance, in this particular case the Board's reasoning and conclusion are nevertheless fully in accord with the relevant caselaw.

"We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citation omitted). Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a question of law, which we review de novo. *SRI Int'l., Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1302 (Fed. Cir. 2019).

Applying the Supreme Court's two-step *Alice/Mayo* framework, we first must determine whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea or a law of nature. *Alice*, 573 U.S. at 217. If they are, we must "consider the elements of each claim both individually and 'as an ordered combination' to determine

whether the additional elements 'transform the nature of the claim' into a patent eligible application" of that abstract idea or natural law. *Id.* (quoting *Mayo*, 566 U.S. at 72).

## A

With respect to claim 34, we conclude, as the Board did, that the claim is directed to the abstract idea of selecting a fishing hook based on observed water conditions. The claimed method requires three steps. First, the user "observ[es] the clarity of water" to determine whether the water is "clear, stained, or muddy." J.A. 24. Second, the user "measur[es] light transmittance at a depth in the water where a fishing hook is to be placed." *Id.* Third and finally, the user "select[s] a colored or colorless . . . fishing hook" based on the clarity and light transmittance of the water, in accordance with the chart that is included in the claim. *Id.* This mental process of hook color selection based on a provided chart demonstrates that claim 34 as a whole is directed to an abstract idea. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("[W]e have treated analyzing information by steps people go through in their minds . . . without more, as essentially mental processes within the abstract-idea category.").

We have held in the computer context that "collecting information" and "analyzing" that information are within the realm of abstract ideas. *Id.* at 1353–54 (collecting cases). The same is true in other contexts, including the fishing context. *Cf. Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."). Claim 34 requires nothing more than collecting information (water clarity and light transmittance) and analyzing that information (by applying the chart included in the claim), which collectively amount to the abstract idea of selecting a fishing hook based on the observed water conditions. Indeed, Mr. Rudy

concedes in his brief that "all that is required of the angler is observation, measuring, and comparison with a predetermined chart." Appellant's Arg. 16. As Mr. Rudy continued, "even a fish can distinguish and select colors . . . the fisherman can do this too." *Id.* at 16–17. While we decline today to adopt a bright-line test that mental processes capable of being performed by fish are not patent eligible, this observation underscores our conclusion that claim 34 is directed to the abstract idea of selecting the color of a fishing hook. *See Elec. Power Grp.*, 830 F.3d at 1354

We are not persuaded by Mr. Rudy's arguments otherwise. Mr. Rudy contends that claim 34's preamble, "a method for fishing," is a substantive claim limitation such that each claim requires actually attempting to catch a fish by placing the selected fishing hook in the water. Appellant's Arg. 8–9. Even if that were true, which we need not decide, such an "additional limitation" would not alter our conclusion because the "character of claim [34], as a whole, remains directed to [an] abstract idea." *Chargepoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019).

Mr. Rudy further argues that claim 34 is not directed to an abstract idea both because fishing "is a practical technological field . . . recognized by the PTO" and because he contends that observing light transmittance is unlikely to be performed mentally. Appellant's Arg. 16–18. Neither is persuasive. There is no dispute that an applicant can obtain subject-matter eligible claims in the field of fishing. But that is irrelevant to the fact that the claims currently before us are not eligible.[4] And while Mr. Rudy contends that "it is doubtful a fisherman could mentally determine light transmittance with the accuracy and precision found

---

[4]    For the same reason, we are not persuaded by Mr. Rudy's argument that patents "similar" to his application were issued by the PTO decades ago. Appellant's Arg. 23–24.

in the claims," the plain language of the claims encompasses such mental determination. J.A. 24. Mr. Rudy admitted as much during prosecution, stating that light transmittance may be measured by any "instrument or method, the claims not specifying how that is to be done." J.A. 994. Because the claims before us are not limited in the way Mr. Rudy suggests, we are not in a position to opine on whether theoretical claims that were so limited would be patent eligible. *See Sanofi-Aventis U.S., LLC v. Dr. Reddy's Labs., Inc.*, 933 F.3d 1367, 1374 (Fed. Cir. 2019) ("We cannot issue an advisory opinion on such a theoretical dispute and we decline to do so here.")

Finally, in an apparent attempt to invoke the machine-or-transformation test for patent eligibility, Mr. Rudy argues that practicing claim 34 "acts upon or transforms fish" by transforming "freely swimming fish to hooked and landed fish" or by transforming a fishing hook "from one not having a target fish on it to one dressed with a fish when a successful strike ensues." Appellant's Arg. 18–19. While the machine-or-transformation test remains "a useful and important clue" for determining eligibility under § 101, *Bilski v. Kappos*, 561 U.S. 593, 604 (2010), we need not decide in this case whether the transformation from free fish to hooked fish is the type of transformation discussed in *Bilski* and its predecessor cases. As Mr. Rudy explains elsewhere in his brief, even if claim 34 was read to require the act of fishing, "landing a fish is never a sure thing. Many an angler has gone fishing and returned empty handed." Appellant's Arg. at 18. Claim 34 therefore does not actually recite or require the purported transformation that Mr. Rudy relies upon.

B

Having concluded that claim 34 is directed to the abstract idea of selecting a fishing hook based on observed water conditions, we turn to step two of the *Alice/Mayo* inquiry and ask whether the elements of the claim, either

individually or as an ordered combination, transform the nature of the claim into a patent eligible application of that abstract idea. *Alice*, 573 U.S. at 217. We conclude that they do not.

In this case, the three elements of the claim (observing water clarity, measuring light transmittance, and selecting the color of the hook to be used) are each themselves abstract, being mental processes akin to data collection or analysis. Considered as an ordered combination, these three steps merely repeat the abstract idea of selecting a fishing hook based on observed water conditions. But transformation of an abstract idea into a patent-eligible claim "requires more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 573 U.S. at 222 (quoting *Mayo*, 566 U.S. at 72). Here, the elements of the claim, either individually or as an ordered combination, do not amount to "'significantly more than a patent upon the ineligible concept itself.'" *Id.* at 219 (quoting *Mayo*, 566 U.S. at 73) (alterations omitted). Accordingly, claim 34 fails to recite an inventive concept at step two of the *Alice/Mayo* test, and is not patent eligible under 35 U.S.C. § 101.

C

Mr. Rudy further contends that the Board erred by considering Claim 34 illustrative of all pending claims and not separately analyzing them. Appellant's Arg. 8, 9. We see nothing in the remaining claims, however, that would meaningfully distinguish them from claim 34 in a patent eligibility analysis.

Claim 38, the only other independent claim on appeal, begins with a method that is substantively identical to claim 34, but includes a slightly different chart for selecting the fishing hook color. J.A. 26. Because the substance of claim 34's hook color chart was not the basis of our eligibility determination, the slightly different substance of

claim 38's chart does not render it patent eligible. Claim 38 includes only one additional limitation, which recites:

> wherein the fishing hook used is disintegrated from but is otherwise connectable to a fishing lure or other tackle and has a shaft portion, a bend portion connected to the shaft portion, and a barb or point at the terminus of the bend, and wherein the fishing hook used is made of a suitable material, which permits transmittance of light therethrough and is colored to colorless in nature.

J.A. 26. These physical details of the fishing hook and lure, which Mr. Rudy does not contend are novel or unconventional, do not change our conclusion that claim 38 is ineligible for patenting. Our step-one analysis of claim 34 is equally applicable to claim 38 because, as described above, this limitation does not change the fact that the character of the claim, as a whole, is directed to an abstract idea. And our step-two analysis is equally applicable because "'well-understood, routine, conventional activities' previously known to the industry" cannot provide an inventive concept. *Alice*, 573 at 221 (quoting *Mayo*, 566 U.S. at 79). We therefore affirm that Board's conclusion that claim 38 is not patent eligible.

For the same reasons, we affirm the Board's conclusions that dependent claims 35, 37, and 40 are not patent eligible, as each recites the physical attributes of the connection between the fishing hook and the fishing lure in ways not meaningfully distinct from claim 38. We also affirm the Board's conclusions regarding claims 45–49, which differ from the previously discussed claims only in that they mandate a specific color of fishing hook, which neither changes the character of the claims as a whole, nor provides an inventive concept distinct from the abstract idea itself. *See, e.g.*, J.A. 27 ("[Claim] 49. The method of claim 37, wherein the fishing hook used is selected to be red.").

## III

For the foregoing reasons, the Board's conclusion that claims 34, 35, 37, 38, 40, and 45–49 of the '360 application are ineligible for patenting is affirmed.

### AFFIRMED

### COSTS

The parties shall bear their own costs.