NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE:  BERNARD JOBIN,**
*Appellant*

---

2020-1067

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 12/523,427.

---

Decided:  May 8, 2020

---

BERNARD JOBIN, Beverly, MA, pro se.

PETER JOHN SAWERT, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu.  Also represented by THOMAS W. KRAUSE, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

---

Before O'MALLEY, WALLACH, and TARANTO, *Circuit Judges.*

PER CURIAM.

Bernard Jobin ("Jobin") appeals a decision of the Patent Trial and Appeal Board ("Board") affirming the examiner's rejection of all pending claims in U.S. Patent Application No. 12/523,427 ("'427 application") under

35 U.S.C. § 101. *Ex Parte Bernard Jobin*, No. 2018-005329, 2019 WL 2318943 (P.T.A.B. May 22, 2019). As explained below, we *affirm*.

## BACKGROUND

The '427 application is titled "Method and System for Developing and Evaluating and Marketing Products Through Use of Intellectual Capital Derivative Rights." J.A. 173. It is directed to methods and systems for developing "products, advertisements, games, and other creative realizations," through reliance on participants who, by contributing, obtain stakes in the developed products. J.A. 176; J.A. 191. Jobin describes Claim 221 of the application as "directed to an online collaborative content management system for online product development," and Claim 231 as "directed to the method of operating an online collaborative content management system." J.A. 101. Claim 221 recites:

> 221. A system corresponding to an online collaborative content management system and operating with a data structure that enables developing and evaluating and marketing products based on derivative rights, comprising:
>
> a server, and user devices, which user devices each corresponds to a user of the system, the server containing a data structure and data, which data structure describes associations of data records and of the data contained in the server, which data includes a defined desired outcome and content items and at least one entitlement option, which entitlement options each defines a conditional entitlement, said described associations indicating at least:
>
> > a) a plurality of sets of data records, which data records in each of the sets are grouped into a plurality of comprised subsets of data records, which subsets each comprises at

least one data record, which data records from the subsets each identifies a content item by containing a content item or by being otherwise associated to a content item, and consequently each of the subsets identifying at least one content item; and

b) one entitled grouping, which entitled groupings each represents a grouping of at least one set from the sets, each entitled grouping being associated with at least one of the entitlement options;

the system being configured to at least:

communicate, from the server to each user device from a plurality of the user devices, the defined desired outcome and at least one description of a plurality of given sets from the sets from the described data structure associations and of the subsets of data records comprised in the given sets, which subsets of data records identify content items, at least one of the given sets from each of the descriptions corresponding to at least one of the sets comprised in at least one of the entitled groupings;

receive, in the server, responses from multiple user devices from the plurality of the user devices, and identify in the server as contributions a plurality of the received responses, and store the contributions in the server,

a) which received responses result from each user device from the multiple user devices receiving at least one of the descriptions of a plurality of given sets and using the described given sets to at least: (i) offer to its user an arrangement of content items by using and conveying, in the arrangement, the data structure associations of the

described given sets and of their subsets of identified content items, and (ii) associate at least one discriminating user rating with at least one of the subsets comprised in each of a plurality of the described given sets, each of the subsets associated with a rating representing a rated subset, and each user rating being indicative of a comparative user evaluation of how well a given subset of identified content items relates to the desired outcome when compared to other subsets within the same described given set, and each user rating being indicative of at least a user selection or a user tagging of one of the rated subsets of identified content items, and (iii) generate a response and communicate the generated response to the server which generated response describes at least one of the rated subsets with its associated rating based on the received descriptions of given sets,

b) which responses are identified in the server as contributions by each at least describing one or a plurality of rated subsets that corresponds, according to the described data structure associations, to one or a plurality of the subsets comprised in one of the entitled groupings, and which user devices, from which the responses identified as contributions were received, each represents a contributor device of the system;

create in the server one or more contribution options, which contribution options each defines an association between a given one of the contributions and one of the entitlement options associated

with one of the entitled groupings that comprises, according to the described data structure associations, one or a plurality of subsets which corresponds to the one or a plurality of the rated subsets described in the given one of the contributions;

communicate from the server, to each of at least one of the contributor devices from which at least one of the contributions was received, at least one of the contribution options that associates the received at least one of the contributions with one of the entitlement options;

generate in the server at least one insight grouping, which insight groupings each represents a grouping of one or of a plurality of the subsets comprised in a given one of the entitled groupings based on (i) the number of described rated subsets that were received in the contributions and that correspond, according to the described data structure associations, to the one or plurality of the subsets comprised in the given one of the entitled grouping and (ii) the ratings associated with each of the described rated subsets that were received, and

classify in the server, as valuable product information, each of one or of a plurality of the content items identified by at least one of the subsets from at least one of the insight groupings;

detect in the server at least one contribution option[s] that each associates one of the entitlement options with one of the contributions that describes one or a plurality of rated subsets which corresponds, according to the described data structure associations, to one or to a plurality of the subsets from one of the insight grouping;

> receive in the server, from a given one of the user devices, a request for granting a given one of the entitlement options that is associated with one of the contributions defined in one of the contribution option communicated to a given one of the contributor devices, which request is indicative that the given one of the user devices was previously communicated, from the server or from the given one of the contributor devices, the one of the contribution options;

> grant in the server the given one of the entitlement options by validating that the given one of the entitlement options was previously detected in the server, and communicate said grant to the given one of the user devices, said grant and said communicate being executed: (i) without restriction, or (ii) after one or more granting conditions are detected, in the server, to have been met.

*Jobin*, 2019 WL 2318943, at *1–2; J.A. 148–150.

Applying the two-step framework set forth in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) and the Patent and Trademark Office's 2019 Revised Patent Subject Matter Eligibility Guidance, 84 Fed. Reg. 50 (Jan. 7, 2019) ("Office Guidance"), the Board found that, aside from the recited online system, data structure, server, and user devices, "all of claim 221's recited limitations, which collectively are directed to soliciting and evaluating product development contributions received from participants, and compensating participants according to that evaluation," "recite[] an abstract idea based on . . . methods of organizing human activity and mental processes." *Jobin*, at *8–13. The Board also found that the additional claim elements reciting an online collaborative content management system, data structure, server, and user devices do not "integrate the abstract idea into a practical application when reading claim 221 as a whole." *Id.* at *13. And, the Board

was not persuaded that these elements indicate any "improve[ment in] the computer or its components' functionality or efficiency, or otherwise change[] the way that th[e] device[] function[s]." *Id.* (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)). The Board also found that the claim does not contain an inventive concept beyond the abstract idea. *Id.* at *18–19. For similar reasons, the Board found independent claims 229, 231, and 239 also directed to an abstract idea. As to the dependent claims in the application, the Board found that the examiner failed to establish a prima facie case of ineligibility and reversed the examiner's rejection for these claims. *Id.* at *19. Jobin requested rehearing of the Board's decision. The Board reconsidered its decision and declined to make any changes therein. J.A. 12.

## DISCUSSION

We review the Board's factual findings for substantial evidence and its legal conclusions de novo. *In re Gartside*, 203 F.3d 1305, 1315–16 (Fed. Cir. 2000). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law we review de novo." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). As we have previously explained, "[w]e are not . . . bound by the Office Guidance, which cannot modify or supplant the Supreme Court's law regarding patent eligibility, or our interpretation and application thereof." *In re Rudy*, No. 2019-2301, 2020 WL 1966855, at *2 (Fed. Cir. Apr. 24, 2020). Accordingly, "we apply our law and the relevant Supreme Court precedent, not the Office Guidance, when analyzing subject matter eligibility." *Id.*

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and

useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  "Laws of nature, natural phenomena, and abstract ideas[, however,] are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (internal quotation marks omitted).  We "follow the Supreme Court's two-step framework for determining patent-eligibility under § 101." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362 (Fed. Cir. 2020) (citing *Alice*, 573 U.S. at 217).  Accordingly, we must determine first whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea or a law of nature.  *Alice*, 573 U.S. at 217.  Under *Alice* step two, if the claims at issue are directed to a patent ineligible concept, we "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012)).

On appeal, Jobin argues that the Board ignored the "built-in capabilities" of his invention "pertaining to timing and measurement" and "improved data structure model." Appellant's Br. 6, 9.  He contends that the Board "overgeneraliz[ed] and mischaracterize[ed]" the claim limitations. *Id.* at 14–17.  He also takes issue with the Board's application of our case law to his case.  *Id.* at 26.  Jobin further contends the Board erred by rejecting his request to use "the simpler and shorter claim 229" as illustrative of all pending claims.  Appellant's Reply Br. 14.  Jobin also appears to argue that the Board and Examiner "adapt[ed] their rejections to changes in Office and Court guidance" without giving him a chance to respond.  Appellant's Br. 28.  We see no merit to Jobin's arguments and conclude that, although primarily framed as an application of the Office Guidance, "the Board's reasoning and conclusion are

nevertheless fully in accord with the relevant caselaw." *See Rudy*, 2020 WL 1966855, at *3.

Despite its expansive language and its recitation of servers and databases, claim 221 of Jobin's application is, at bottom, directed to the collection, organization, grouping, and storage of data using techniques such as conducting a survey or crowdsourcing. As the Board correctly concluded, this claim is directed to a method of organizing human activity—a hallmark of claims directed to abstract ideas. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("[W]e have treated analyzing information by steps people go through in their minds . . . without more, as essentially mental processes within the abstract-idea category."). The server and database recited in the claim are merely tools used for organizing human activity, and are not an improvement to computer technology. Thus, the claim does not present any specific asserted improvement in computer capabilities. We reject Jobin's arguments to the contrary, which amount to nothing more than conclusory statements unmoored from specific claim language.

We next turn to *Alice* step two and consider whether the elements of Jobin's claim 221, either individually or as an ordered combination, transform that claim into a patent eligible application of the abstract idea. *Alice*, 573 U.S. at 217. We conclude that they do not. Claim 221 does not impose any meaningful limit on the method of collection, organization, grouping, and storage of data. Rather, the "online system," "server," "data structure," and "user device" elements recite generic technology for implementing the claimed abstract idea. The Board correctly concluded that, considered individually or as an ordered combination, the additional elements in Jobin's claim 221 do not transform the claim into a patent eligible application of the abstract idea.

As to Jobin's argument that the Board erred by rejecting his request to use "the simpler and shorter claim 229" as illustrative of all pending claims, Appellant's Reply Br. 14, we find this argument unpersuasive. We do not see anything in claim 229, or, indeed, in independent claims 231 and 239, that would meaningfully distinguish these claims from claim 221 for purposes of patent eligibility. Accordingly, we conclude that the Board did not err in concluding that claims 221, 229, 231, and 239 of Jobin's '427 application are patent ineligible.

## CONCLUSION

We have considered Jobin's remaining arguments and find them unpersuasive. For the foregoing reasons, the decision of the Board is affirmed.

## **AFFIRMED**

## COSTS

The parties shall bear their own costs.