NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VERIPATH, INC.,**
*Plaintiff-Appellant*

**v.**

**DIDOMI,**
*Defendant-Appellee*

---

2020-1777

---

Appeal from the United States District Court for the Southern District of New York in No. 1:19-cv-01702-GBD, Judge George B. Daniels.

---

Decided:  February 8, 2021

---

JONATHAN K. WALDROP, Kasowitz Benson Torres LLP, Redwood Shores, CA, for plaintiff-appellant.  Also represented by HEATHER KIM.

CHARLES R. MACEDO, Amster Rothstein & Ebenstein LLP, New York, NY, for defendant-appellee.  Also represented by CHRISTOPHER LISIEWSKI.

---

Before LOURIE, CHEN, and HUGHES, *Circuit Judges.*

LOURIE, *Circuit Judge*.

VeriPath, Inc. ("VeriPath") appeals from a decision of the United States District Court for the Southern District of New York holding that the claims of U.S. Patent 10,075,451 ("the '451 patent") are ineligible for patent under 35 U.S.C. § 101. *VeriPath, Inc. v. Didomi*, No. 19 CIV. 1702 (GBD), 2020 WL 1503687 (S.D.N.Y. Mar. 30, 2020) ("*Decision*"). Because we agree with the district court that the patent claims patent-ineligible subject matter, we *affirm*.

## BACKGROUND

VeriPath owns the '451 patent, which is generally directed to a data privacy system. '451 patent, Abstract. The patent describes that users can use mobile device applications to "socialize, bank, shop, [and] navigate." *Id.* col. 1 ll. 25–27. However, as users interact with the applications, "information about [their] activities or status may be collected automatically." *Id.* col. 1 ll. 38–41. The patent states that "[b]ecause of the sensitivity of this personal information, many states and countries" have enacted laws requiring companies that collect such data to (1) present users with a specific privacy disclosure explaining how their personal information will be used and (2) obtain the users' consent before the information is collected. *Id.* col 1 ll. 51–55. We are told that the laws governing privacy disclosures and consent requirements can differ from locality to locality, requiring companies to present and collect different privacy disclosures and consents based upon the users' location. *See id.* col. 2 ll. 1–13.

The patent purports to address the drawbacks "of current data collection/privacy schemes by providing an improved, more transparent opt-in process." *Id.* col. 2 ll. 29–31. Specifically, the patent describes an "arrangement [that] allows a component of an application (e.g., a mobile app), in conjunction with other components of a distributed system, to determine what information is to be collected

from a user, how that information will be used, and what permissions are required from that user for that user." *Id.* col. 2 ll. 29–36. "In some embodiments, the user may be presented with certain offers in exchange for the user's consent to a proposed use of certain personal information." *Id.* col. 2 ll. 46–48.

Claim 1, which is representative of the claims before us, reads as follows:

> 1. A method for controlling access to a user's personal information comprising:
>
> providing a software component for inclusion in an application, the software component having an application programming interface (API);
>
> obtaining, from the application executing on a device of a user of the application, personal information about the user of the application, the personal information obtained via the API by the software component executing on the device;
>
> identifying the type of the obtained personal information;
>
> determining, based on at least the type of obtained personal information, a required permission from the user for at least one proposed use of the obtained personal information;
>
> presenting, to the user, a first offer to provide access to at least one enhanced function of the application in exchange for the required permission; and
>
> responsive to the user providing the required permission, providing the user with access to the at least one enhanced function of the application.

*Id.* col. 16 ll. 7–28.

VeriPath sued Didomi, asserting that Didomi had infringed "at least claim 1 of the '451 Patent." J.A. 276.

Didomi then filed a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the claims of the '451 patent are ineligible for patent under 35 U.S.C. § 101. *See* J.A. 553–77.

The district court considered the claims under the Supreme Court's two-step *Alice* framework for determining patent eligibility. At *Alice* step one, the court observed that claim 1 of the patent is directed to "the abstract idea of granting permission to access personal information in exchange for enhanced functionality via the API, a routine piece of software." *Decision*, 2020 WL 1503687, at *3. At *Alice* step two, the court determined that claim 1 lacks an inventive concept sufficient to convert the abstract concept into a patent-eligible application. *Id.* at *4. Additionally, the court asserted that the dependent claims are also ineligible because they are "considerably analogous to claim 1 and suffer from similar defects." *Id.* Having concluded that the claims are ineligible for patent under § 101, the court granted Didomi's motion to dismiss. *Id.* at *5. VeriPath appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the grant of a motion to dismiss under the law of the regional circuit. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (citing *K–Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013)). In the Second Circuit, "grant of a motion to dismiss is reviewed de novo to determine whether the claim is plausible on its face, accepting the material factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bascuñan v. Elsaca*, 927 F.3d 108, 116 (2d Cir. 2019).

Patent eligibility under § 101 is an issue of law that may contain underlying issues of fact. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). We review the district court's ultimate conclusion on patent eligibility de novo. *Id.* To determine whether a patent claims eligible subject matter, we follow the Supreme Court's familiar two-step framework. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–73 (2012). First, we determine whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *See Alice*, 573 U.S. at 217. If so, we proceed to the second step and determine whether the claims nonetheless include an "inventive concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72, 78). To recite an "inventive concept," at step two, a patent must do more than recite an abstract idea "while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72). "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82.

At *Alice* step one, VeriPath argues that claim 1 is not directed to an abstract idea, but rather to "a patent-eligible improvement to computer functionality." Appellant Br. 25. Specifically, VeriPath asserts that the claimed system (i) "can generate different privacy disclosures based on a user's location in real-time"; and (ii) the remote database managing the "privacy disclosure policies upon which the user-specific disclosure is generated can be regularly updated without the need for users to agree to the updates." *Id.* at 32.

We disagree with VeriPath. As the district court correctly observed "[s]tripped of excess verbiage, at its most basic level, claim 1 is anchored on the abstract idea of exchanging privacy for functionality." *Decision*, 2020 WL 1503687, at *3 (citation omitted). Specifically, it describes

an agreement wherein (1) an API obtains personal information, (2) the type information is identified, (3) a required permission for use of the personal information is determined based on the type of personal information, (4) the user is offered access to an enhanced function of an application in exchange for permission to use the personal information, and (5) the user gets access to the enhanced function after consenting. *See* '451 patent col. 16 ll. 8–28. Moreover, claim 1 is not focused on any technological improvement to computer functionality. Rather, at most, claim 1 is directed to no more than an improvement to the abstract notion of exchanging privacy for functionality that utilizes an API to achieve the desired result. "[I]t is not enough, however, to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (citations omitted). Accordingly, we conclude that claim 1 is directed to an abstract idea.

At *Alice* step two, VeriPath contends that claim 1 covers patent-eligible subject matter because it is directed to a "distributed data privacy system" that allows for the "generation of a user-specific privacy disclosure based on a user's personal information *before* presenting the user-specific privacy disclosure to the user, receiving the user's opt-in consent, collecting a user's personal information, and providing the user with the use of an enhance[d] functionality of the application in exchange for the consent." Appellant Br. 39–40.

We disagree with VeriPath. None of these steps, viewed "both individually and 'as an ordered combination,'" transform the nature of the claim into patent-eligible subject matter. *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79). Instead, claim 1 comprises implementing the above-identified abstract idea using "conventional steps, specified at a high level of generality." *Alice*, 573 U.S. at 222 (quoting *Mayo*, 566 U.S. at 82). That is insufficient to

supply an "inventive concept." *Id.* For example, the claim recites "*identifying* the type of the obtained personal information" and "*presenting*, to the user, a first offer to provide access to at least one enhanced function." *See* '451 patent col. 16 ll. 8–28 (emphases added); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). VeriPath emphasizes that the order of the specific steps of the claim constitutes inventive subject matter. *See* Appellant Reply Br. 19 ("[T]he generation of a user-specific privacy disclosure *before* presenting the user-specific privacy disclosure to the user . . . transform[s] the claims into . . . patent-eligible subject matter under this Court's precedent.") (emphasis in original). However, VeriPath fails to explain how generating a disclosure *before* it is presented to the user is anything but routine and conventional under *Alice* step two.

We additionally conclude that the dependent claims are directed to substantially similar subject matter as claim 1 and are therefore ineligible under § 101. As the district court observed, the dependent claims "are considerably analogous to claim 1 and suffer from similar defects." *Decision*, 2020 WL 1503687, at *4. Specifically, the dependent claims "merely use vague terms to implement claim 1's abstract concept." *Id.* For example, claim 2, recites "[t]he method of claim 1, wherein the at least one enhanced function of the application is functionality not available to at least one other group of users of the application." '451 patent col. 16 ll. 29–32. Claim 3 recites "[t]he method of claim 1, wherein the at least one enhanced function of the application is a reduced number of commercial advertisements presented to the user in the application." *Id.* col. 16 ll. 33–36. Plainly, like claim 1, the dependent

claims are directed to the abstract idea of exchanging privacy for functionality.

Finally, we reject VeriPath's argument that "the district court erred by overlooking potentially narrowing claim constructions." Appellant Br. 35. Here, VeriPath "did not raise any claim construction dispute and did not provide any proposed construction" to the court. *See Mortg. Application Techs., LLC v. MeridianLink, Inc.*, No. 2020-1504, 2021 WL 97347, at *3 (Fed. Cir. Jan. 12, 2021). Rather, it merely stated before the district court that there are issues of fact that "*may* necessitate claim construction." J.A. 638–39 (emphasis added). We thus conclude that the district court did not err in granting Didomi's motion to dismiss.

## CONCLUSION

We have considered VeriPath's remaining arguments but find them unpersuasive. For the foregoing reasons, the judgment of the district court is *affirmed*.

**AFFIRMED**